UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                        CRIM. CASE NO. 10-20766

v.                                     PAUL D. BORMAN
                                         UNITED STATES DISTRICT JUDGE

PAUL WILLIAM HILTON,

        Defendant.
_____/

## ORDER DENYING DEFENDANT'S
## MOTION TO SUPPRESS STATEMENT

On November 15, 2011, Defendant Paul William Hilton filed a Motion to Suppress Statement made on November 3, 2010. On December 13, 2011, the United States filed a response. Oh February 24, 2012, the Court held an evidentiary hearing at which two witnesses testified for the government, Investigator Donya Jackson and FBI Special Agent David Martin. For the reasons that follow, the Court denies Defendant's Motion to Suppress Statement.

On November 3, 2010, while Defendant was incarcerated at the Federal Bureau of Prisons Transfer Center in Oklahoma City, Oklahoma, he was interviewed in a private room by the two aforementioned federal law enforcement personnel. Jackson is an investigator at the U.S. Attorney's Office in the Eastern District of Missouri, and Special Agent Martin is presently assigned to the Detroit FBI office.

The parties agree that Hilton was advised of his Miranda rights, and signed the form confirming that he reviewed the Miranda warnings provided by the interviewers, who also signed

1

the form.

Hilton, who had been twice convicted for child pornography offenses, was incarcerated for violating the conditions of supervised release related to his most recent child pornography conviction in Missouri.

The single issue here, is whether he invoked his Miranda protections given the undisputed fact that after receiving the warnings he responded that he "did not want to answer any questions that might incriminate him further."

Subsequent to Hilton's response, Investigator Jackson further questioned Hilton to attempt to clarify what this response meant, and thereafter concluded from Hilton's subsequent responses to her further explanation of his right to not answer every questions and to stop the questioning at any time that he did not want to shut down all questioning. Indeed, Hilton thereafter spoke at length over the next two hours about the child pornography subject matter Jackson raised, minimizing his role, placing blame on co-defendant Nicole Hollingsworth, and discussing penology related to child pornography offenders in general.

The sole issue before the Court, as agreed to by both parties, is whether Defendant Hilton's response to the Miranda warnings – I don't want to answer any questions that might incriminate me further – was a clear and unequivocal invocation of his Miranda rights. The Court does not believe it was unequivocal, but instead was equivocal, and that the investigators responded as required under legal precedent. A learned treatise has framed the issue in these terms:

> Some courts have concluded that in the event of an "equivocal" invocation of the right to silence, the only permissible course of action for the police is "to attempt to clarify the defendant's

intention...."

LaFave, Israel et al, *Criminal Procedure* 3d Ed. 2007, §6.9(g), Vol. 2, Pp. 856-57.

This is precisely what Investigator Jackson did here. Defendant Hilton signed a paper acknowledging his receipt of his Miranda warnings, and then equivocated as to whether or not he wanted to speak with the agents. In response, Investigator Jackson did clarify and reiterate Defendant's rights. Hilton, who had previously been convicted of child pornography felonies in the criminal justice system, and who was aware from his supervised release violation hearing, that the government was already in possession of his Blackberry containing child pornography information tied to Nicole Hollingsworth, proceeded to speak at length with the interviewing officers about child pornography.

Defendant Hilton was incarcerated in Oklahoma City for violation of his conditions of supervised release relating to his Missouri sex offender conviction, where he had been under the supervision of E.D. MO. Probation Officer Clint Vestal. Indeed, Investigator Jackson had referenced Vestal in her questioning insofar as Hilton's supervisory release violations which included his seized Blackberry which contained interactions of child pornography with Nicole Hollingsworth. *Id.* at 43.

A Sixth Circuit decision, recently vacated by the Supreme Court on other grounds, supports the Court's conclusion to not suppress Hilton's statement. In *Simpson v. Jackson*, 615 F.3d 421, 431 (6th Cir. 2010), vacated sub. nom. *Sheets v. Simpson* __S.Ct.__ 2012 WL603060 (U.S.) Feb. 27, 2012,[1] the Court of Appeals noted:

---

[1] In *Sheets*, the Supreme Court vacated the Sixth Circuit judgment which had suppressed certain statements made by the imprisoned petitioner during a prison questioning by officers investigating a crime unrelated to the imprisonment. The Supreme Court remanded to the

3

> Similarly, even *Simpson* concedes that when a suspect does not clearly invoke his right to remain silent or when the invocation is ambiguous, officers may follow up with clarifying questions. *Davis v. United States*, 512 U.S. 452, 461-62, 114 S.Ct. 2350 (1994).

The Supreme Court held in *Davis v. United States*, 114 S.Ct. 2350, 2356 (1994):

> [A]fter a knowing and voluntary waiver of Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.
> Of course, when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney.

Finally, the Supreme Court, in Berguis v Thompkins, 130 S.Ct.2250,2259-2260, (2010) reaffirmed Davis:

> In the context of invoking the *Miranda* right to counsel, the Court in *Davis v United States,* 512 U.S. 452, 459, held that a suspect must do so "unambiguously."...
>
> The Court has not yet stated whether an invocation of the right to remain silent can be ambiguous or equivocal, but there is no principled reason to adopt different standards for determining when an accused has invoked the *Miranda* right to counsel at issue in *Davis* ...
>
> Tompkins did not say that he wanted to remain silent or that he did not want to talk with the police. Had he made either of these simple, unambiguous statements, he would have invoked his " ' right to cut off questioning.' "

The officers' testimony at the instant hearing supports this Court's conclusion to not suppress the statement:

---

Sixth Circuit "for further consideration in light of *Howes v. Fields,* 565 U.S. __ (February 21, 2012)" In *Howes,* the Supreme Court held that the questioning of a prisoner is not always custodial when the prisoner is removed from the general prison population and questioned about events that occurred outside the prison. The Supreme Court held that the "record in this case reveals that respondent was not taken into custody for purposes of *Miranda*." *Howes*, 2012 WL 538280 Slip Op. P.11. The *Howes* issue was not raised in the instant case.

4

> He stated to me that he didn't want to make any statements that would incriminate him any further, anything that we had not already discussed about [Probation Officer] Clint Vestal's information to me.
>
> . . . .
>
> I then wanted to clarify that with him, and I told him that he didn't have to answer any questions that he didn't want to.

Rough Transcript P. 27. Jackson then began to talk again with Hilton about his rights:

> It was just to reassure him that if there was a question that I asked that he was not comfortable with, he did not have to answer me; he could stop the interview at any time; he could skip a line of questioning if it felt that it was going to be implicating him further as he had stated.

*Id.* at 28.

During the interview, Defendant Hilton provided answers implicating co-defendant Nicole Hollingsworth, and potentially mitigating his role in the offense. *Id.* at 29. Defendant Hilton also explicated about the probation system, polygraph tests, and about group therapy for sex offenders. *Id.* at 30. These answers indicate a willingness to talk, and indeed to use the interview to argue his lack of major culpability.

Jackson testified that Defendant Hilton's background included that he had started a coffee shop business in Missouri and that he was articulate and educated. *Id.* at 32-33.

Special Agent Martin, who had been sequestered during Jackson's testimony, reaffirmed Jackson's testimony.

> She said that he was free to go at any time; that he didn't have to speak with us at all if he didn't want to; that he could, he could decline to answer any of our questions at any time.

*Id.* at 55.

The Court finds that Defendant Hilton, educated, competent, with a background and

5

experience in the criminal justice system, did not unequivocally evidence an intent to exercise his rights under Miranda, that Jackson made the appropriate inquiry after his response, and that the record establishes that Defendant Hilton knowingly and voluntarily waived his rights under Miranda.

Defendant's Motion to Suppress is DENIED.

SO ORDERED.

DATED: 3-6-12

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE